UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CARLOS A. SANTIAGO,

                        Plaintiff,              Case # 14-CV-6719-FPG

v.

                                                  DECISION & ORDER

THE CITY OF ROCHESTER, et al.,

                        Defendants.

**INTRODUCTION**

Plaintiff Carlos A. Santiago brings this civil rights action against Defendants City of Rochester, Officer Shawn Jordan, RN Jeananne Odell, and Monroe County. ECF No. 82 (second amended complaint). His claims arise out of his arrest by Officer Jordan in March 2012. Presently before the Court is Officer Jordan and the City of Rochester's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) ECF No. 87. For the reasons that follow, their motion is GRANTED IN PART and DENIED IN PART.

**LEGAL STANDARD**

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw*, 448 F.3d 518, 521 (2d Cir. 2006). A complaint will survive a motion to dismiss under Rule 12(b)(6) when it states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A claim for relief is plausible when the plaintiff pleads sufficient facts that allow the Court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. In considering the plausibility of a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104

1

(2d Cir. 2011). At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . a presumption of truthfulness." *In re NYSE Specialists Secs. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007). "[O]n a 12(c) motion, the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *Sarikaputar v. Veratip Corp.*, 371 F. Supp. 3d 101, 104 (S.D.N.Y. 2019).

## BACKGROUND

The following facts are taken from the amended complaint, unless otherwise noted. In essence, Santiago alleges a case of mistaken identity. At 2:45 A.M. on March 6, 2012, Officer Jordan, who was then monitoring traffic from a parking lot near East Main Street in Rochester, noticed a red Toyota run a red light at an excessive speed as it turned onto East Main Street from Birch Crescent. *See* ECF No. 86 at 2; ECF No. 94 at 10. The vehicle proceeded to drive out of Officer Jordan's sight. At the same time, another vehicle stopped near Officer Jordan. The driver informed him that his vehicle had been rear ended by that Toyota vehicle "on Goodman Street and East Avenue." ECF No. 82 at 4. After some delay—perhaps a few seconds, but in any case less than one minute[1]—Officer Jordan pulled out of the parking lot and drove down East Main Street in search of the Toyota. Officer Jordan was in a marked police car. *See* ECF No. 86 at 3.

---

[1] The complaint is not clear on the amount of time that elapsed between when Officer Jordan lost sight of the Toyota and exited the parking lot in pursuit. In his opposition brief, Santiago seems to suggest it was less than thirty seconds. *See* ECF No. 94 at 10 (citing Officer Jordan's deposition testimony). Santiago does not appear to take the position that the delay was any more than one minute, so for purposes of the motion, the Court will assume the delay was that long.

2

At the same time, Santiago was driving a red Toyota on East Main Street. He avers, however, that he had not been involved in the hit-and-run and had not turned onto East Main Street from Birch Crescent. *See* ECF No. 82 at 4-5.

Officer Jordan caught up to Santiago's Toyota and "began to approach [] [Santiago] at a dangerously high rate of speed without turning on the emergency lights and siren." *Id.* at 5. As a result, Santiago—who was not aware that he was being chased by a police officer—became "startled and attempted to escape," fearing that the approaching vehicle "intended to cause him harm." *Id.* A car chase ensued. Santiago travelled "north on Kingston Street, east on Garson Avenue, and north on Greeley Street." *Id.* Santiago states that it was not until "after he turned northbound on Greeley Street [that] Officer Jordan turned on his emergency lights and sirens for the very first time." ECF No. 94 at 7.

The chase ended when Officer Jordan rear ended Santiago's vehicle off Greeley Street and onto the adjacent grass. Santiago claims that at that point, he was still not aware that "the car that struck his vehicle was a police vehicle." *Id.* at 6. Panicking, Santiago fled from his vehicle and began running. A second chase ensued by foot.

Santiago alleges that during the foot chase, he surrendered and did not resist, but Officer Jordan still tackled him to the ground and "improperly and aggressively handcuffed" him. *Id.* Santiago warned Officer Jordan to be careful while handcuffing him because "he had a minor tear in his left shoulder," but Officer Jordan told Santiago to "shut the f*** up," "slammed [Santiago's] head into the ground," yanked Santiago's arms up, pepper sprayed Santiago, and then pulled Santiago up from the ground so forcefully that Santiago's right shoulder was dislocated. *Id.* at 7 (internal quotation marks omitted). Santiago screamed in pain and told Officer Jordan that his

3

right shoulder had been dislocated, but Officer Jordan replied that he did not care and again told Santiago to "shut the f\*\*\* up." *Id.*

Santiago continued to complain and request medical attention, but Officer Jordan and the other officers on scene ignored him and did not provide him with medical assistance. Officer Jordan placed Santiago under arrest and "aggressively threw" him into a police cruiser. *Id.* at 6. While in the cruiser, Santiago heard officers laughing at him. Santiago continued to scream for medical attention and denied doing anything wrong. In response, Officer Jordan told Santiago to shut up and sprayed him with pepper spray. Officer Jordan ultimately issued Santiago 23 tickets related to the incident, including for failing to comply with a police order under New York Vehicle & Traffic Law § 1102. *See* ECF No. 94-2 at 28.

Officers transported Santiago to the Monroe County Jail. Santiago spoke with Defendant Jeananne Odell, a registered nurse, asking for medical attention for his injuries. He alleges that Odell refused to provide proper medical care and only provided him with a Motrin. Santiago claims that he never received adequate medical care during the few hours he was at the jail before he was released on bail.

After his release, Santiago went to the emergency room at Highland Hospital. Medical personnel there "immediately diagnosed [him] with a dislocated shoulder" and a right rotator cuff tear. *Id.* at 10. Santiago underwent surgery to correct the injury.

All charges against Santiago were subsequently dismissed. In December 2014, he brought this action. In his amended complaint, he raises the following claims: (1) false arrest against Officer Jordan and the City of Rochester; (2) false imprisonment against Officer Jordan and the City of Rochester; (3) malicious prosecution against Officer Jordan and the City of Rochester; (4)

4

excessive force against Officer Jordan and the City of Rochester; (5) deliberate indifference to serious medical needs against Officer Jordan, the City of Rochester, Nurse Odell, and Monroe County; (6) unlawful policies and practices and failure to supervise and train against the City of Rochester; and (7) unlawful policies and practices and failure to supervise and train against Monroe County.

## DISCUSSION

The City of Rochester and Officer Jordan (hereinafter "Defendants") move to dismiss all but the excessive force claim against Officer Jordan, arguing that Santiago's allegations are insufficient to state valid claims. The Court address each claim in turn.

### I. False Arrest Claim

The first claim is a false arrest claim under 42 U.S.C. § 1983. Santiago alleges that Officer Jordan did not have probable cause to arrest Santiago after the chase. Defendants argue that Officer Jordan had probable cause because (1) when Santiago turned onto East Main Street from Birch Crescent, Officer Jordan observed the vehicle turn at "excessive speed" and "against a steady, red traffic signal," ECF No. 86 at 2; and (2) soon thereafter, a person informed Officer Jordan that a Toyota had rear ended his car and fled the scene. Santiago alleges that he was not, in fact, driving the Toyota that committed those infractions, and had instead been driving near a different section of East Main Street prior to the chase. *See* ECF No. 94 at 10-11.

"The elements of a claim of false arrest under § 1983 are substantially the same as the elements of a false arrest claim under New York law." *Maron v. Cty. of Albany*, 166 F. App'x 540, 541 (2d Cir. 2006) (summary order) (internal quotation marks omitted). "[U]nder New York law, the elements of a false arrest claim are: (1) the defendant intended to confine the plaintiff, (2)

5

the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Id.* "The existence of probable cause to arrest" renders the confinement privileged "and is a complete defense to an action for false arrest." *Horvath v. City of New York*, No. 12-CV-6005, 2015 WL 1757759, at *3 (E.D.N.Y. Apr. 17, 2015). "Probable cause exists when one has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Martinez v. City of New York*, 340 F. App'x 700, 701 (2d Cir. 2009) (summary order) (internal quotation marks and brackets omitted).

Furthermore, it is well-established that "a mistaken identity can provide the basis for probable cause." *Id.* "If officers arrest an individual based on a mistaken identification, that arrest is still constitutionally valid if the police have probable cause to arrest the person sought and the arresting officer reasonably believed that the arrestee was that person." *Id.* Thus, the relevant question is not whether Santiago in fact committed the unlawful conduct he was alleged to have committed, but whether Officer Jordan could reasonably believe that Santiago did so. *See Brown v. City of New York*, No. 10-CV-5229, 2013 WL 3245214, at *9 (E.D.N.Y. June 26, 2013).

With the questioned framed in that way, Santiago's complaint fails to state a claim for false arrest. It is undisputed that Officer Jordan observed a red Toyota commit traffic violations when it ran a red light at an excessive speed. It is also undisputed that at the same time, a passerby informed Officer Jordan that the Toyota had just been involved in a hit-and-run. Once he drove onto East Main Street, Officer Jordan saw a red Toyota on the same street and travelling in the same direction as the offending vehicle.

The Court has no trouble concluding that, at that point, Officer Jordan had reasonable suspicion to stop Santiago's vehicle. Officer Jordan certainly had reasonable suspicion to stop the red Toyota he observed run a red light at an excessive speed—even leaving aside the alleged hit and run, it is well-established that "an observed traffic violation legitimates a stop." *United States v. Dhinsa*, 171 F.3d 721, 725 (2d Cir. 1998). And, despite the fact that he lost sight of the red Toyota, Officer Jordan had reasonable grounds to believe that Santiago's vehicle was the red Toyota that he observed commit the traffic violations: Santiago's vehicle matched the make and color of the offending vehicle, and it was on the same street, travelling in the same direction, and in the same general area of the offending vehicle within a minute of the traffic violations. All of these facts made it reasonable for Officer Jordan to believe that Santiago's vehicle was the same red Toyota he previously observed.

To be sure, an officer may not seize a person or vehicle based on an observation or description that is so generalized so as to apply "to large numbers of people." *Prince v. United States*, 825 A.2d 928, 934 (D.C. 2003). The circumstances here—the matching characteristics of Santiago's vehicle and the other red Toyota, the spatial and temporal proximity between Officer Jordan's observations of the red Toyota and of Santiago's vehicle, and the fact that it was 2:45 A.M.—were not so general as to apply to a large number of people, but were instead specific enough to give Officer Jordan a reasonable basis to believe Santiago had committed the traffic infractions. *See Sorrell v. Cty. of Nassau*, 162 F. Supp. 3d 156, 168 (E.D.N.Y. 2016) (reasonable suspicion existed to stop vehicle matching description of robbery suspects' car, where suspects were stopped "only 1.5 miles away from the alleged crime and approximately a half hour after the alleged crime occurred"); *United States v. Breckenridge*, 400 F. Supp. 2d 434, 442 (D. Conn. 2005)

7

(reasonable suspicion existed to stop a "black Monte Carlo" that matched description of vehicle allegedly involved in harassment of victim, where officer observed the vehicle a few hours after harassment and within "a two-to-three mile radius" of the victim's house); *see also United States v. Tilmon*, 19 F.3d 1221, 1225 (7th Cir. 1994) (collecting cases).

Indeed, courts have found similar circumstances to suffice to establish probable cause. *See, e.g.*, *Robinson v. Cook*, 706 F.3d 25, 32 (1st Cir. 2013) (probable cause existed to seize car allegedly involved in hit and run, where seized car matched witness descriptions, the car was found "within a mile of the hit-and-run site," and the engine was warm, which suggested that car "had been driven recently"); *United States v. Miller*, 532 F.2d 1335, 1338 (10th Cir. 1976) (collecting cases and concluding that, in the case of an armed robbery, "a general description of either the getaway car or the suspects is a sufficient basis for the existence of probable cause"); *United States v. Dalmau*, No. 14-CR-165, 2016 WL 5919836, at *5 (W.D.N.Y. Oct. 11, 2016) (collecting cases and stating that "probable cause to stop a vehicle and to arrest its occupants can rest on 911 calls and witness statements describing a vehicle and placing it at the scene of a crime that just recently occurred"); *Prince*, 825 A.2d at 933-34; *see also* Wayne R. LaFave, 2 *Search & Seizure* § 3.4(c) (5th ed. and Westlaw supp.) (discussing factors to consider in deciding whether officer have sufficient cause to stop vehicle based on previous observations of criminal activity). Thus, the combination of Officer Jordan's observations of the red Toyota and the passerby's claim of a hit and run gave him probable cause to arrest Santiago.

Santiago's conduct after Officer Jordan pursued him also justifies his subsequent arrest. Although Santiago claims that he did not realize a police officer was pursuing him, he appears to concede that Officer Jordan was driving a marked police car and that after Officer Jordan activated

8

his lights and sirens, he continued to flee by foot.  *See* ECF No. 94 at 6 (stating that Officer Jordan "did not turn on his vehicle's emergency lights and sirens until [Santiago] turned [his car] northbound on Greeley Street").  Even if Santiago was panicking and did not subjectively realize he was fleeing from police, *see* ECF No. 82 at 6, probable cause is evaluated from the perspective of the officer, not the suspect.  *United States v. Delossantos*, 536 F.3d 155, 159 (2d Cir. 2008).  Santiago's flight in the face of Officer Jordan's show of authority is a strong indicium of "mens rea" and gave Officer Jordan probable cause to believe that Santiago was the driver of the red Toyota involved in the hit and run.  *Cf. Broome Coughlin*, 871 F. Supp. 132, 135 (N.D.N.Y. Dec. 15, 1994) ("[C]ourts have held that flight or attempted flight during a *Terry* stop transforms an officer's reasonable suspicion into probable cause.").  Moreover, Santiago's flight and failure to obey Officer Jordan's authority gave rise to a separate justification for his arrest.  *See United States v. Bogle*, No. 07-CR-241, 2008 WL 222673, at *3 (E.D.N.Y. Jan. 25, 2008) ("When [the officer] turned on his siren and lights, indicating that [the defendant] should pull over, [the defendant] attempted to flee in violation of N.Y. Veh. & Traf. Laww [sic] § 1102.").

Santiago responds that there are issues of fact warranting discovery and that dismissal at this stage is inappropriate.  The Court disagrees.  While Santiago contests whether he was, in fact, the driver of the red Toyota involved in the hit and run, the truth of the matter is ultimately immaterial.  What matters is whether Officer Jordan reasonably believed Santiago was that driver. *See Martinez*, 340 F. App'x at 701.  Santiago concedes that Officer Jordan (1) observed a red Toyota commit traffic violations, (2) learned from a passerby that the Toyota had been involved in a hit and run, (3) saw Santiago's vehicle, which looked like the Toyota, on the adjacent street within a minute of observing the Toyota, and (4) during the pursuit, saw Santiago flee by foot after

9

he had turned on his lights and sirens. *See* ECF No. 94 at 7, 10, 11. As discussed above, those facts suffice to establish probable cause and justify Santiago's arrest, even if he is correct that this is a case of mistaken identity.

Accordingly, Santiago's false arrest claim against Officer Jordan and the City of Rochester must be dismissed.

## II. False Imprisonment and Malicious Prosecution

Because the Court has concluded that the allegations establish that Officer Jordan had probable cause to arrest Santiago, Santiago's claims for false imprisonment and malicious prosecution also fail. *See Kilburn v. Vill. of Saranac Lake*, 413 F. App'x 362, 363-64 (2d Cir. 2011) (summary order) (false imprisonment and malicious prosecution claims properly dismissed on summary judgment where probable cause existed to arrest).

## III. Indifference to Medical Needs

Next, Santiago alleges that Defendants were deliberately indifferent to his serious medical needs. *See* ECF No. 82 at 18-19. The basis of this claim is that Officer Jordan failed to take any steps to help Santiago when he complained about his injuries immediately after his arrest. Instead, Officer Jordan told him to "shut up" and pepper sprayed him. *See* ECF No. 82 at 8. Separately, Santiago alleges that he received inadequate medical care after he was transported and booked at the Monroe County Jail. *See id.* at 9.

Defendants argue that Santiago's allegations fail to state a claim because, while at the Monroe County Jail, Santiago was a pretrial custodial detainee of the County, not of the City or Officer Jordan. Therefore, they may not be held liable for Santiago's allegedly inadequate medical treatment occurring at the jail.

This argument misreads the nature of the claim against Defendants. As to Officer Jordan and the City of Rochester, Santiago alleges that he received inadequate medical care *before* his booking at the jail. *See* ECF No. 82 at 8; ECF No. 94 at 16. The case law supports the proposition that an arresting officer may be held liable for his deliberate indifference to an arrestee's medical needs in the course of or in the immediate aftermath of an arrest. *See, e.g.*, *Griffin-Robinson v. Warhit*, No. 20-CV-2712, 2020 WL 2306478, at *7 (S.D.N.Y. May 6, 2020) (analyzing deliberate indifference claim where plaintiff alleged officers handcuffed her, placed her into police car, and refused to give her medication despite her pleas); *Gersbacher v. City of New York*, 134 F. Supp. 3d 711, 724 (S.D.N.Y. 2015) (plaintiff alleged officers pinned him to the ground and refused to give him inhaler during asthma attack).

Because Defendants offer no other challenge to this claim, the Court declines to dismiss it against Officer Jordan. However, for the reasons discussed in the next Section, the claim is dismissed against the City.

## IV.   *Monell* Liability

Most of Santiago's complaint is dedicated to the alleged wrongful conduct of individual governmental actors. He does not connect their conduct to broader municipal policy or custom. Nevertheless, he seeks to hold the City of Rochester liable for Officer Jordan's conduct on the theories that it failed to train and supervise him and that it maintained policies and customs that precipitated Officer Jordan's conduct. ECF No. 82 at 20-21.

Defendants argue, and the Court agrees, that the complaint presents insufficient allegations to state a claim against the City.

11

A municipality may not be "held liable under § 1983 solely because it employs a tortfeasor." *Bowen v. Cty. of Westchester*, 706 F. Supp. 2d 475, 483-84 (S.D.N.Y. 2010). Instead, a plaintiff must show that "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 483 (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). In the context of evaluating the sufficiency of a complaint, a plaintiff "cannot merely allege the existence of a municipal policy or custom, but must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012) (collecting cases). "[M]ere allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details." *Id.* Likewise, a claim that a municipality failed to train or supervise an alleged tortfeasor requires some factual details to survive a motion to dismiss. *See Tricoles v. Bumpus*, No. 05-CV-3728, 2006 WL 767897, at *4 (E.D.N.Y. Mar. 23, 2006) ("Courts have dismissed § 1983 . . . claims where a complaint merely asserts bare conclusory statements that a defendant supervisor failed to supervise or train, or that the alleged constitutional violation occurred as a result of a custom or policy that was issued by the defendant supervisor.").

Santiago's allegations do not pass muster. He offers no factual details "about the nature of any suspect policies, practices, or procedures, much less how they caused [Officer Jordan] to violate [his] rights." *Bruckman v. Greene Cty.*, No. 19-CV-670, 2020 WL 886126, at *5 (N.D.N.Y. Feb. 24, 2020). He does not present facts to explain how the City failed to train or supervise Officer Jordan. *See Simms v. City of New York*, 480 F. App'x 627, 631 n.4 (2d Cir. 2012) (summary order) (rejecting the proposition that a "mere conclusory allegation that the City failed

to train its officers, without any supporting factual material, is sufficient to state a plausible claim for municipal liability under § 1983").

In his opposition brief, Santiago only defends this claim by arguing that Internal Affairs failed to investigate or discipline Officer Jordan for his alleged use of excessive force. *See* ECF No. 94 at 17-19. But generally, a municipality's failure to discipline an officer for a single incident is insufficient to permit *Monell* liability. *See Askew v. Lindsey*, No. 15-CV-7496, 2016 WL 4992641, at *5 (S.D.N.Y. Sept. 16, 2016) (noting that the "singular failure to discipline" officers for one alleged incident of unlawful conduct "cannot give rise to an inference of deliberate indifference without further evidence of a municipal policy or practice"). Santiago does not present any facts or argument that would persuade the Court to find his claim an exception to this rule. Therefore, all claims against the City of Rochester are dismissed.

### V.     Punitive Damages

Finally, Defendants argue that "there is no basis for the imposition" of punitive damages against Officer Jordan. ECF No. 87-3 at 31.

"Punitive damages are available in a § 1983 action 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *BaRoss v. Greenlawn Volunteer Fire Dep't, Inc.*, No. 16-CV-4805, 2017 WL 2124424, at *5 (E.D.N.Y. May 16, 2017) (internal quotation marks omitted). At this stage, and construing all facts in Santiago's favor, the Court cannot conclude that Santiago is wholly foreclosed from obtaining punitive damages against Officer Jordan. Because the case is proceeding regardless, the Court concludes that the better course is for the parties to address this

issue after discovery and on a full record.  *Accord Parrott v. Krasicky*, No. 12-CV-820, 2013 WL 3338570, at *5 (D. Conn. July 2, 2013).

## CONCLUSION

For the foregoing reasons, Defendants' motion for judgment on the pleadings (ECF No. 87) is GRANTED IN PART and DENIED IN PART.  The claims for false arrest, false imprisonment, and malicious prosecution against Officer Jordan are dismissed.  The only surviving claims against Officer Jordan are for (1) excessive force and (2) deliberate indifference to medical needs.  All claims against the City of Rochester are dismissed, and the Clerk of Court shall terminate the City as a defendant.

IT IS SO ORDERED.

Dated: August 24, 2020
       Rochester, New York

                                                  HON. FRANK P. GERACI, JR.
                                                  Chief Judge, United States District Court