AO 440 (Rev 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western District of New York

| | |
|---|---|
| Carlos A. Santiago<br><br>*Plaintiff(s)*<br>v.<br>City of Rochester, Monroe County,<br>Officer Shawn Jordan, et al.<br><br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)     Civil Action No.  14-CV-06719<br>)<br>)<br>)<br>)<br>) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Monroe County
C/O Corporation Counsel
39 West Main Street
Rochester, New York  14614

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    R. Anthony Rupp III, Esq.
Rupp Baase Pfalzgraf Cunningham LLC
1600 Liberty Building
424 Main Street
Buffalo, New York  14202

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date:    June 17, 2020

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.   14-CV-06719

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*

was received by me on *(date)*                    .

☐ I personally served the summons on the individual at *(place)*

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00        .


I declare under penalty of perjury that this information is true.


Date: _____          _____
                                              *Server's signature*

                                        _____
                                              *Printed name and title*


                                        _____
                                              *Server's address*

Additional information regarding attempted service, etc:

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

CARLOS A. SANTIAGO
71 Hillview Drive
Rochester, New York 14622

        Plaintiff,

v.

CITY OF ROCHESTER
c/o Corporation Counsel
30 Church Street
Rochester, New York 14614

MONROE COUNTY
c/o Corporation Counsel
39 West Main Street
Rochester, New York 14614

OFFICER SHAWN JORDAN, individually
and in his capacity as a City of Rochester
Police Officer,
630 North Clinton Avenue
Rochester, New York 14605

JEANANNE ODELL, R.N., individually and in
her capacity as a Monroe County Jail nurse,
130 South Plymouth Avenue
Rochester, New York 14614

        Defendants.

**SECOND AMENDED
VERIFIED COMPLAINT
AND JURY DEMAND**

Civil Action No. 14-CV-06719

Plaintiff, Carlos A. Santiago ("Plaintiff" or "Mr. Santiago"), by his attorneys,

Rupp Baase Pfalzgraf Cunningham LLC, as and for his verified complaint against Defendants,

City of Rochester, Monroe County, Officer Shawn Jordan, individually and in his capacity as a

City of Rochester Police Officer, and Jeananne Odell, R.N., individually and in her capacity as a

Monroe County Jail nurse, allege as follows:

## JURISDICTION

1.      This action is brought under 42 U.S.C. §§ 1983 and 1988 and under the Fourth and Fourteenth Amendments of the United States Constitution.

2.      This Court has subject matter jurisdiction over all claims pursuant to 28 U.S.C. §§ 1331, 1343, and 1983.

3.      Plaintiff further invokes this Court's pendent jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all state law claims and as against parties that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy.

## VENUE

4.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Western District of New York because the events forming the basis of Plaintiff's verified complaint occurred in this District.

## PARTIES

5.      At all times hereinafter mentioned, Mr. Santiago was and is a citizen of the State of New York, County of Monroe, residing at 71 Hillview Drive, Rochester, New York 14622.

6.      Defendant, the City of Rochester, was and is a municipal corporation duly organized and existing under the laws of the State of New York and has a business address at 30 Church Street, Rochester, New York 14614.

2

7.     Defendant, the City of Rochester, through its officers, agents, employees, and/or specialized units, promulgate, implement, review, and/or enforce, as policymakers, certain policies regarding the conduct and actions of police officers employed by the City of Rochester, including Officer Shawn Jordan.

8.     Defendant, Officer Shawn Jordan, was and is a resident of the County of Monroe, and State of New York.  He was and is a police officer employed by the City of Rochester at all times hereinafter mentioned, and was acting within the scope of his employment and official capacity as a police officer at the time of the incident giving rise to this lawsuit.  In addition, Officer Shawn Jordan is being sued in his individual capacity for damages caused by his actions and/or conduct.

9.     Defendant, Monroe County, was and is a municipal corporation duly organized and existing under the laws of the State of New York and has a business address at 39 West Main Street, Rochester, New York 14614.

10.     Defendant, Monroe County, through its officers, agents, employees, and/or specialized units, promulgate, implement, review, and/or enforce, as policymakers, certain policies regarding the conduct and actions of Monroe County Jail personnel employed by Monroe County, including Jeananne Odell, R.N.

11.     Defendant, Jeananne Odell, R.N., was and is a resident of the County of Monroe, and State of New York.  She was and is a nurse employed by Monroe County at all times hereinafter mentioned, and was acting within the scope of her employment and official capacity as a municipally-employed nurse at the time of the incident giving rise to this lawsuit.  In addition, Jeananne Odell, R.N. is being sued in her individual capacity for damages caused by her actions and/or conduct.

3

12.     At all relevant times, Defendants, either personally or through their employees, were acting under the color of law and/or in compliance with the official rules, regulations, laws, statutes, policies, customs, ordinances, usages and/or practices of the City of Rochester and/or Monroe County.  Defendants' actions and conduct show that they did not, nor could they, reasonably rely upon any existing law.

## FACTUAL BACKGROUND

13.     On March 6, 2012, Plaintiff was driving a red Toyota License Plate No. FTR-3644.

14.     Plaintiff had bought the red Toyota earlier that day and Plaintiff transferred the plates from his prior vehicle to the red Toyota.

15.     Upon information and belief, at approximately 2:45 a.m., Defendant Officer Jordan spotted the Plaintiff driving the red Toyota License Plate No. FTR-3644.

16.     Upon information and belief, Defendant Officer Jordan watched the Plaintiff's red Toyota make a right hand turn on East Main Street in an east bound direction.

17.     Defendant Officer Jordan was approached by the driver of a Ford Explorer who told him that he was rear ended by a Toyota on Goodman Street and East Avenue.

18.     At no point on March 6, 2012 did Plaintiff travel on Goodman Street or East Avenue.

19.     When he was approached by the driver of the Ford Explorer, Defendant Officer Jordan was sitting in his municipally-owned vehicle in a stationary location at 917 East Main Street monitoring traffic with radar.

4

20.    Defendant Officer Jordan did not witness the Plaintiff's red Toyota or any other Toyota rear end the Ford Explorer.

21.    Upon information and belief, while talking to the driver of the Ford Explorer, Defendant Officer Jordan lost sight of the Plaintiff's red Toyota.

22.    Prior to turning right onto East Main Street, Plaintiff took the following route: north on Adwen Street; northeast on Rutgers Street which turned into Vickers Park A; Merriman Street; east on Atlantic Avenue; north on Greenleaf Street; east on Leighton Avenue; north on Bowman Street; and then east on East Main Street.

23.    Defendant Officer Jordan pulled out of the parking lot at 917 East Main Street and began to travel east on East Main Street when he spotted the Plaintiff's red Toyota.

24.    A chase ensued involving Plaintiff's red Toyota License Plate No. FTR-3644 and Defendant Officer Jordan's municipally-owned vehicle driving eastbound on East Main Street.

25.    Defendant Officer Jordan began to approach the Plaintiff at a dangerously high rate of speed without turning on the emergency lights and sirens for his municipally-owned vehicle.

26.    Plaintiff was not aware that the vehicle Defendant Officer Jordan was erratically operating behind Plaintiff was a city-owned vehicle.

27.    Plaintiff was startled and attempted to escape from the vehicle operated by Defendant Officer Jordan.

28.    Plaintiff reasonably believed that the vehicle operated by Defendant Officer Jordan intended to cause him harm and that Plaintiff was in danger.

29.     Plaintiff turned north on Kingston Street, east on Garson Avenue, and north on Greeley Street.

30.     Two city-owned police vehicles, including the municipally-owned vehicle operated by Defendant Officer Jordan, approached Plaintiff's vehicle from Culver Road as he turned north on Greeley Street.

31.     Defendant Officer Jordan rear ended Plaintiff's red Toyota pushing Plaintiff's vehicle off the street into the grass.  Plaintiff's tire blew out from striking the curb.  At this time, Plaintiff did not know that the car that struck his vehicle was a police vehicle.

32.     Plaintiff panicked and exited his vehicle at 12 Greeley Street.

33.     Plaintiff fled from his vehicle on foot and began running northbound on Greely Street.

34.     Defendant Officer Jordan exited his municipally-owned vehicle and began to chase the Plaintiff on foot.

35.     Defendant Officer Jordan was able to catch up to the Plaintiff across the street from 21 Greeley Street.

36.     In Defendant Officer Jordan's own words, he caught up to the Plaintiff "very quickly" and a "small resistance occurred" between himself and the Plaintiff across the street from 21 Greeley Street.

37.     The "small resistance" that occurred was Defendant Officer Jordan tackling the Plaintiff after the Plaintiff had surrendered.

38.     Defendant Officer Jordan improperly and aggressively handcuffed the Plaintiff even though Plaintiff was not resisting.

6

39.     While Defendant Officer Jordan was aggressively applying the handcuffs, Plaintiff told Defendant Officer Jordan to be careful because he had a minor tear in his left shoulder.

40.     Defendant Officer Jordan told the Plaintiff to "shut the f*** up" and he deliberately and with malice slammed the Plaintiff's head into the ground.

41.     Defendant Officer then yanked Plaintiff's arms up with extreme force.

42.     While Plaintiff was still on the ground, Defendant Officer Jordan took pepper spray from Plaintiff's right pocket and sprayed Plaintiff's face.

43.     After spraying the Plaintiff with pepper spray, Defendant Officer Jordan stood up with the Plaintiff in between his legs and Plaintiff's hands handcuffed behind his back.

44.     Defendant Officer Jordan grabbed Plaintiff's handcuffed wrists and aggressively pulled the Plaintiff up off of the ground.

45.     The aggressive pull from Defendant Officer Jordan caused Plaintiff's right shoulder to become dislocated.

46.     Plaintiff screamed out in pain and told Defendant Officer Jordan that he dislocated Plaintiff's right shoulder.

47.     Defendant Officer Jordan told the Plaintiff "I don't care" and "shut the f*** up."

48.     At this time, there were other City of Rochester police officers present at the scene.

49.     Plaintiff told Defendant Officer Jordan and other City of Rochester police officers that his right shoulder was in pain and that he believed it was dislocated.

50.     The other City of Rochester police officers ignored Plaintiff's screams for help and requests for medical attention.

51.     Defendant Officer Jordan then informed the Plaintiff that he was under arrest.

52.     After placing the Plaintiff into custody, he aggressively threw the Plaintiff in the back of his municipally-owned vehicle.

53.     Although Plaintiff could not see because of the pepper spray, Plaintiff could hear three or more voices outside of the police vehicle laughing at the Plaintiff.

54.     Plaintiff knew that he had mucus all over his face and that he was crying from the pepper spray.

55.     Plaintiff yelled at the City of Rochester police officers "what have I done to deserve this kind of hostility and brutality?"

56.     The City of Rochester police officers started talking to each other and they told the Plaintiff that he was going to jail for a very long time because he rear-ended another vehicle and left the scene of the crime.

57.     Plaintiff responded that the he did not know what the City of Rochester police officers were talking about because he did not rear-end another vehicle.

58.     While in the back of the police vehicle, the Plaintiff continued to yell and scream asking for medical attention.

59.     While Plaintiff continued to ask for medical attention in the back of the police vehicle, Defendant Officer Jordan told the Plaintiff to "shut up" and he again sprayed the Plaintiff with pepper spray.

60.     Defendant Officer Jordan and other City of Rochester police officers searched the Plaintiff's red Toyota License Plate No. FTR-3644.

61.     Plaintiff was then unlawfully detained and transported to 130 South Plymouth Street, Rochester, New York, Monroe County Jail.

62.     After booking, Plaintiff was examined by Defendant Jeananne Odell, R.N. because he was yelling in pain that his right shoulder was dislocated.

63.     Plaintiff told Defendant Jeananne Odell, R.N. that Defendant Officer Shawn Jordan intentionally or negligently caused the Plaintiff physical injury by wrenching his right shoulder and arm and improperly lifting him from the ground by the handcuffs that were improperly applied to his wrists.

64.     Defendant Jeananne Odell, R.N. either negligently or intentionally refused the Plaintiff medical care and reasonable accommodations.

65.     Defendant Jeananne Odell, R.N. administered OTC Motrin when she knew, or reasonably should have known, that the Plaintiff had a concussion.

66.     Plaintiff's mother bailed him out in the early morning of March 6, 2012.

67.     After Plaintiff's mother posted the bail, personnel at the Monroe County Jail located at 130 South Plymouth Street, Rochester, New York could not locate the Plaintiff for a few hours.

68.     During that time before he was released, Plaintiff continued to make it known to Monroe County Jail personnel that he was in severe pain and discomfort and that he believed his right shoulder was dislocated.

69.     After Plaintiff was eventually found by Monroe County Jail personnel, he was released.

9

70.     At no time prior to his release from Monroe County Jail was the Plaintiff
offered medical care or reasonable accommodations.

71.     Plaintiff's mother immediately took the Plaintiff directly from Monroe
County Jail to Highland Hospital's emergency department.

72.     Medical personnel at Highland Hospital's emergency department
immediately diagnosed the Plaintiff with a dislocated shoulder.

73.     Because there was a substantial delay between the time of the injury and
the time that Plaintiff first received medical treatment for his right shoulder, the Plaintiff had to
be sedated and force his shoulder back into place.

74.     Plaintiff's right arm was put into a sling and he was referred to Dr. Gregg
Nicandri.

75.     Defendant Officer Shawn Jordan unlawfully issued the Plaintiff twenty-
three (23) tickets the morning of March 6, 2012.

76.     Some of those tickets included alleged traffic violations by the Plaintiff for
speeding.

77.     Defendant Officer Shawn Jordan never measured with radar the speed the
Plaintiff's red Toyota was traveling on March 6, 2012.

78.     All allegations supporting Defendant Officer Shawn Jordan's claim that
Plaintiff was speeding were based on his visually estimated speed of the Plaintiff's red Toyota.

79.     All charges were later dismissed against the Plaintiff.

80.     Plaintiff complained to the City of Rochester Internal Affairs Department
soon after the incident.

81.     Plaintiff was told by a City of Rochester officer with the Internal Affairs Department that there was no report from any of the City of Rochester officers present at the scene that Plaintiff's shoulder was dislocated or that Plaintiff's right shoulder was in pain.

82.     Defendant Officer Jordan and other City of Rochester police officers knew, or should have known, that Plaintiff was in severe pain and discomfort after he was detained and placed into custody on March 6, 2012 because Plaintiff was screaming in pain.

83.     Dr. Gregg Nicandri diagnosed the Plaintiff with a dislocated right shoulder which caused a right rotator cuff tear.

84.     Dr. Gregg Nicandri surgically repaired Plaintiff's right shoulder repairing the damage caused by Defendant Officer Shawn Jordan's excessive force.

85.     Plaintiff lost use of his right arm for a considerable amount of time as a result of this incident, and still has limited use of his right arm today.

86.     Plaintiff is a National Federation Professional Trainer Exercise Fitness Therapist Specialist, and since the incident on March 6, 2012 he has been unable to practice in his profession as an exercise fitness specialist.

87.     Prior to the excessive force used by Defendant Officer Shawn Jordan on March 6, 2012, Plaintiff was healthy, very strong, and in shape.

88.     Since this incident, Plaintiff has been unable to care for himself and exercise and lift weights as he was accustomed to.

89.     Plaintiff incurred over $20,000.00 in credit card debt because he was not able to work as a National Federation Professional Trainer Exercise Fitness Therapist Specialist and utilize his certifications as a professional trainer.

90.     At the time of the incident, Plaintiff's sons were 19, 17, and 15.

11

91.    Plaintiff's sons are very strong and athletic young men and Plaintiff was not able to participate in sports activities with them as he had before March 6, 2012.

92.    Plaintiff was injured by Defendant Officer Shawn Jordan's use of excessive force five days before his youngest daughter's first birthday.

93.    Because of the pain in his right shoulder, Plaintiff was unable to play with his youngest daughter, hold her, feed her, bathe her, and take care of her the way he wished he could as her father.

94.    Plaintiff was also unable to purchase school clothes and sneakers for his thirteen (13) year old daughter because Plaintiff was unable to work and provide for his family.

95.    Plaintiff's inability to provide for his family's needs caused an argument between himself and his daughter that lasted more than four (4) years.

96.    Plaintiff is still working on repairing his relationship with his daughter today.

97.    As a result of the events alleged herein, and due to the actions taken by the individual defendants, Plaintiff suffered and continues to suffer physical pain, emotional trauma, discomfort, humiliation, fear, anxiety, PTSD, and embarrassment, among other things.

98.    The conduct of Defendant Officer Jordan, in detaining Plaintiff and using force against him, was totally without probable cause, was excessive, and was done maliciously, falsely, and in bad faith.

99.    Plaintiff now lives in constant fear of the City of Rochester police officers and the possibility that they could again illegally detain himself or his family members and use excessive force causing severe and permanent injury to himself or his family.

100.    This fear has caused Plaintiff severe emotional and psychological distress.

12

101.    As a direct and proximate result of Defendants' conduct, Plaintiff has been compelled to retain the services of counsel to protect and enforce his rights, and therefore, Plaintiff has incurred and continues to incur attorneys' fees, expert fees, and costs for which Plaintiff is entitled to reimbursement in an amount to be established at the time of trial pursuant to 42 U.S.C. § 1988.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

### VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT
### False Arrest under 42 U.S.C. § 1983
### Against Defendants Officer Shawn Jordan and City of Rochester

102.    Plaintiff incorporates the allegations contained in paragraphs 1 through 93 of this verified complaint as if fully set forth herein.

103.    Defendants are liable pursuant to 42 U.S.C. § 1983 for objectively unreasonably seizing and unlawfully arresting Plaintiff in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

104.    Defendants were acting under the color of law when Plaintiff was arrested.

105.    Defendants did not have probable cause to charge that Plaintiff committed a crime recognized under the laws of New York State.

106.    Defendants deprived Plaintiff of the rights, privileges, and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States and in violation of 42 U.S.C. § 1983.

107.    Defendants confined Plaintiff when Defendant Officer Shawn Jordan handcuffed the Plaintiff and told him he was going to jail on March 6, 2012.

108.     Plaintiff was aware of the confinement by Defendants and repeatedly advised the Defendants that he did not consent to the confinement.

109.     The confinement by the Defendants was not otherwise privileged and was performed in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States.

110.     As a direct and proximate result of the foregoing, Plaintiff was damaged and injured in an amount to be determined at trial.

111.     The aforesaid conduct by the Defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Plaintiff claims punitive damages in an amount commensurate with the wrongful acts alleged herein.

## SECOND CLAIM FOR RELIEF

### VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT
### False Imprisonment under 42 U.S.C. § 1983
### Against Defendants Officer Shawn Jordan and the City of Rochester

112.     Plaintiff incorporate the allegations contained in paragraphs 1 through 103 of this verified complaint as if fully set forth herein.

113.     Defendants are liable pursuant to 42 U.S.C. § 1983 for objectively unreasonably seizing and unlawfully arresting Plaintiff in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

114.     Defendants were acting under the color of law when Plaintiff was arrested.

115.     Defendants did not have probable cause to charge that Plaintiff committed a crime recognized under the laws of New York State.

116.    Defendants deprived Plaintiff of the rights, privileges, and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States and in violation of 42 U.S.C. § 1983.

117.    Defendants confined Plaintiff when they handcuffed Plaintiff and told him he was going to jail on March 6, 2012.

118.    Defendants further confined Plaintiff when he was brought to Monroe County Jail and when Plaintiff had to appear for criminal charges pressed against him by the Defendants, as described above.

119.    Plaintiff was aware of the confinement by Defendants and repeatedly advised the Defendants that he did not consent to the confinement.

120.    The confinement by the Defendants was not otherwise privileged and was performed in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States.

121.    As a direct and proximate result of the foregoing, Plaintiff was damaged and injured in an amount to be determined at trial.

122.    The aforesaid conduct by the Defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Plaintiff claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

### THIRD CLAIM FOR RELIEF

**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT**
**Malicious Prosecution under 42 U.S.C. § 1983**
**Against Defendants Officer Shawn Jordan and the City of Rochester**

123.    Plaintiff incorporates the allegations contained in paragraphs 1 through 114 of this verified complaint as if fully set forth herein.

124.    Defendants unreasonably seized and unlawfully arrested Plaintiff in violation of the Fourth and Fourteenth Amendment of the United States Constitution.

125.    Defendants, despite knowing that probable cause did not exist to detain, arrest, and prosecute Plaintiff's criminal charges, acted intentionally, and with malice, to cause Plaintiff to be arrested, charged and prosecuted for those charges, thereby violating Plaintiff's rights pursuant to the Fourth and Fourteenth Amendments of the United States Constitution.

126.    The prosecution of the charges levied by the Defendants against Plaintiff on March 6, 2012 were terminated in Plaintiff's favor.

127.    But for Defendants' unlawful and malicious conduct, Plaintiff would not have been arrested and prosecuted.

128.    Defendants' actions and conduct were malicious and deprived Plaintiff of his liberty without probable cause and were in violation of clearly established constitutional law and no reasonable police officer would have believed that his or her actions were lawful.

129.    As a direct and proximate result of the foregoing, Plaintiff was damaged and injured in an amount to be determined at trial.

130.    The aforesaid conduct by the Defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Plaintiff claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## FOURTH CLAIM FOR RELIEF

## VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
### Excessive Force under 42 U.S.C. § 1983

16

### Against Defendants Officer Shawn Jordan and the City of Rochester

131.    Plaintiffs incorporates the allegations contained in paragraphs 1 through 122 of this verified complaint.

132.    Based upon the aforesaid conduct, Defendants illegally used excessive force under the circumstances against Plaintiff in violation of his Fourth Amendment right to be secure in her person from unreasonable seizures.

133.    Defendants touched and caused Plaintiff to be touched in a harmful and offensive manner.

134.    Defendants' actions placed Plaintiff in apprehension of imminent harmful and offensive bodily contact.

135.    Defendants did so without privilege or consent from Plaintiff.

136.    Defendants' conduct under the circumstances was an excessive use of force on Plaintiff which a reasonable officer in their position would not have used under the circumstances.

137.    As a result of Defendants' conduct, Plaintiff has suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

138.    As a direct and proximate result of the foregoing, Plaintiff was damaged and injured in an amount to be determined at trial.

139.    The aforesaid conduct by the Defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Plaintiff claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

### FIFTH CLAIM FOR RELIEF

17

**VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS**
**Deliberate Indifference to Serious Medical Needs under 42 U.S.C. § 1983**
**Against All Defendants**

140.    Plaintiff incorporates the allegations contained in paragraphs 1 through 131 of this verified complaint.

141.    Defendants had a duty under the Eighth and Fourteenth Amendments to the Constitution of the United States to provide for the safety and well-being of the Plaintiff.

142.    Defendants, under the color of state law, acted with deliberate indifference to Plaintiff's medical needs in violation of Plaintiff's right to be free from cruel and unusual punishment under the Eighth Amendment to the Constitution of the United States.

143.    The Defendants acted with recklessness and deliberate indifference because they knew of Plaintiff's need for medical treatment, but intentionally refuse to provide it; prevented Plaintiff from receiving needed medical treatment; failed to take Plaintiff's complaints seriously; failed to send Plaintiff for adequate medical care, diagnostic testing, or get Plaintiff a timely consultation with specialists; and delayed necessary medical treatment for a non-medical reason.

144.    Defendants acted with recklessness and deliberate indifference when they ignored and failed to treat Plaintiff's injury, causing it to worsen.

145.    Plaintiff made known to the Defendants his very serious and obvious medical problems and injuries.

146.    Despite the Defendants' actual or constructive knowledge of Plaintiff's very serious and obvious injury to his right shoulder, Defendants failed to ensure that Plaintiff received immediate attention of a specialist and specialized care in a hospital.

147.    At all times the Defendants acted under the color of state law.

18

148.     As a direct and proximate result of Defendants' recklessness and
deliberate indifference regarding the Defendants' own policies, and failure to properly treat
Plaintiff's condition, and neglect in providing appropriate referrals and treatment, Plaintiff has
suffered catastrophic permanent injury.

149.     As a direct and proximate result of the foregoing, Plaintiff was damaged
and injured in an amount to be determined at trial.

150.     The aforesaid conduct by the Defendants was willful, malicious,
oppressive, and/or reckless and was of such a nature that Plaintiff claims punitive damages
against each of them in an amount commensurate with the wrongful acts alleged herein.

## SIXTH CLAIM FOR RELIEF

### VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
**Policy, Custom, and Practice of Defendants and
Failure to Supervise and Train under 42 U.S.C. § 1983
<u>Against the City of Rochester</u>**

151.     Plaintiff incorporates the allegations contained in paragraphs 1 through
142 of this verified complaint as if fully set forth herein.

152.     Prior to March 6, 2012, Defendant the City of Rochester developed and
maintained policies, customs, and practices exhibiting deliberate indifference to the
constitutional rights of persons in the City of Rochester, which caused the violation of Plaintiff's
rights.

19

153.    At all relevant times, Defendant the City of Rochester was aware that Officer Shawn Jordan was inadequately trained regarding the Fourth and Fourteenth Amendment, yet Defendant the City of Rochester maintained a policy or custom of failing to provide Officer Shawn Jordan training on the Fourth and Fourteenth Amendment or adequate supervision.

154.    It was the policy, custom, or both of Defendant the City of Rochester to inadequately supervise and train its police officers, including Officer Shawn Jordan, thereby failing to prevent the constitutional violations against the Plaintiff.

155.    Upon information and belief, Defendant the City of Rochester maintained a policy, custom, or practice of retaliating against individuals who lawfully object to police actions or behave in a way that officers perceive as disrespectful.

156.    Defendant the City of Rochester failed to properly screen its officers and retained officers who have a history of inappropriate and unlawful acts, and Defendant the City of Rochester failed to properly train and supervise members of the City of Rochester Police Department, and failed to provide proper procedures and policies of the Department, including (i) procedure to use emergency lights and sirens when chasing an individual suspected of committing a crime; (ii) procedure to properly detain an individual without the use of force; (iii) procedure to not use force to detain an individual who has voluntarily surrendered himself to police officers; (iv) procedure to properly apply handcuffs; (v) procedure to properly lift an individual from a prone position on the ground to his feet; (vi) procedure for when a City of Rochester police officer is to use and when not to use his/her standard-issued spray against a detained or yet to be detained individual; (vii) procedure for when to provide medical attention to an individual who may have a serious injury; (viii) procedure for when to take a suspect with a

serious injury to the hospital to receive treatment before booking; (ix) procedure for accurately reporting an officer's basis for believing there is probable cause for an arrest; (x) procedure for investigating an individual's claim that officers falsely arrested and imprisoned that individual; and (xi) procedure for not arresting an individual when there is no credible evidence of a crime that has been allegedly committed.

157.    Defendant the City of Rochester's policies, customs, and practices demonstrate a deliberate indifference to the constitutional rights of persons within the City of Rochester and caused the violation of Plaintiff's rights alleged herein.

158.    Defendant the City of Rochester ratified and acquiesced in the unlawful conduct of Officer Shawn Jordan, as evidenced by their failure to discipline Defendant Officer Shawn Jordan, and by their refusal to investigate the underlying false arrest and imprisonment of the Plaintiff on March 6, 2012.

159.    As a direct and proximate result of the City of Rochester's policies, customs, and practices, Plaintiff was damaged and injured in an amount to be determined at trial.

160.    The aforesaid conduct by Defendant the City of Rochester was willful, malicious, oppressive, and/or reckless and was of such a nature that Plaintiff claims punitive damages in an amount commensurate with the wrongful acts alleged herein.

## SEVENTH CLAIM FOR RELIEF

### VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
**Policy, Custom, and Practice of Defendants and
Failure to Supervise and Train under 42 U.S.C. § 1983
<u>Against Monroe County</u>**

161.    Plaintiff incorporates the allegations contained in paragraphs 1 through 152 of this verified complaint as if fully set forth herein.

162.    Prior to March 6, 2012, Defendant Monroe County developed and
maintained policies, customs, and practices exhibiting deliberate indifference to the
constitutional rights of persons in Monroe County, which caused the violation of Plaintiff's
rights.

163.    Defendant Monroe County had a policy and custom in place that deprived
Plaintiff of his civil rights as Defendant Monroe County's policy and custom for referring
patients for emergency medical care was deficient or improperly implemented.

164.    Defendant Monroe County and its agents, servants, and/or employees have
a duty under the Eighth and Fourteenth Amendments to the United States Constitution to provide
needed medical care to inmates and detainees at Monroe County Jail in conformity with the
standard for delivery of such medical care in the State of New York as a whole.

165.    At all relevant times, Defendant Monroe County was aware that Jeananne
Odell R.N. was inadequately trained regarding the Eight and Fourteenth Amendment, yet
Defendant Monroe County maintained a policy or custom of failing to provide Jeananne
Odell R.N. training on the Eighth and Fourteenth Amendment or adequate supervision.

166.    It was the policy, custom, or both of Defendant Monroe County, to
inadequately supervise and train its personnel at the Monroe County Jail, including Jeananne
Odell R.N., thereby failing to prevent the constitutional violations against Plaintiff.

167.    Defendant Monroe County, knowing of the inadequacies in the Monroe
County Jail's medical facility staffing and procedures had a duty under the Eighth and
Fourteenth Amendment to establish and implement policies, practices, and procedures designed
to assure that inmates and detainees at the Monroe County Jail received medical care and

treatment in conformity with the standards for delivery of such medical care and treatment in the State of New York as a whole.

168.   Defendant Monroe County failed to properly screen personnel who worked at the Monroe County Jail and knowing of the inadequacies and deficiencies in the medical facilities at the Monroe County Jail, failed and neglected to establish and implement policies, practices, and procedures designed to assure that inmates and detainees, including the Plaintiff, received medical treatment and care at the standards therefore in New York State as a whole, including (i) adopting procedures Defendant knew, or reasonably should have known, would be ineffective in delivering medical treatment and care at the standards required in New York State; (ii) adopting a custom and policy to not allow inmates, detainees, and/or prisoners to be transferred to proper medical facilities; (iii) adopting a custom and policy of deliberately failing to allow inmates, detainees, and/or prisoners to receive medical treatment at proper medical facilities even when advised that the inmate, detainee, and/or prisoner is in need of medical care at a hospital facility; (iv) adopting a custom and policy of refusing and failing to address inmates, detainees, and/or prisoners serious medical needs; (v) failing to adopt policies, practices, and procedures to ensure that personnel at the Monroe County Jail's medical facility were properly trained and prepared to adequately care for inmates, detainees, and/or prisoners serious medical needs; and (vi) adopting a custom and policy of personnel at the Monroe County Jail's medical facility not taking seriously the medical needs and complaints of pain made by inmates, detainees, and/or prisoners.

169.   Defendant Monroe County's policies, customs, and practices demonstrate a deliberate indifference to the constitutional rights of persons within Monroe County and caused the violation of Plaintiff's rights alleged herein.

23

170.    Defendant Monroe County ratified and acquiesced in the unlawful conduct of Jeananne Odell R.N. herein, as evidenced by its failure to discipline Jeananne Odell R.N., and by its refusal to investigate the underlying failure to properly treat the Plaintiff's serious medical needs on March 6, 2012.

171.    As a direct and proximate result of Monroe County's policies, customs, and practices, Plaintiff was damaged and injured in an amount to be determined at trial.

172.    The aforesaid conduct by Defendant Monroe County was willful, malicious, oppressive, and/or reckless and was of such a nature that Plaintiff claims punitive damages in an amount commensurate with the wrongful acts alleged herein.

## DEMAND FOR JURY TRIAL

173.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

## PRAYER FOR RELIEF

Plaintiff, Carlos A. Santiago, prays for relief and demand judgment as follows:

1.    That Plaintiff be awarded compensatory damages against all Defendants in an amount to be determined at trial;

2.    That Plaintiff be awarded punitive damages against all Defendants in an amount to be determined at trial;

3.    That this Court, pursuant to 42 U.S.C. § 1988, issue an order awarding Plaintiff reasonable attorneys' fees, together with the costs of this action against all Defendants; and

24

    4.      That this Court award such other further relief, together with any other

legal or equitable relief, or both, as the Court deems just and proper.

Dated:    June 3, 2020
              Buffalo, New York

                          **RUPP BAASE PFALZGRAF CUNNINGHAM** LLC
                          Attorneys for Plaintiff, Carlos A. Santiago

                          /s/ R. Anthony Rupp III
                          R. Anthony Rupp III, Esq.
                          Chad A. Davenport, Esq.
                          1600 Liberty Building
                          Buffalo, New York  14202
                          rupp@ruppbaase.com
                          davenport@ruppbaase.com
                          (716) 854-3400

**VERIFICATION**

STATE OF NEW YORK   )
                           : ss.:

COUNTY OF MONROE   )

        Carlos A. Santiago, being duly sworn, deposes and says that he is the plaintiff named in the within entitled action; that he has read the foregoing Verified Amended Complaint and knows the contents thereof; and that the same is true to his own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters he believes them to be true.

                                      Carlos A. Santiago, Plaintiff

MONROE COUNTY NY

Sworn to before me this
27 day of May, 2020.

Notary Public
PATRICK MCLAUGHLIN
# 01 MC 6404750
MONROE COUNTY.
Exp. res. 2/24/24

